UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVE'S DETAILING, INC. d/b/a THE ALLEN GROUPE, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) 1:11-cv-1585-RLY-DKL ) ) |
| CATLIN INSURANCE COMPANY, INC. | ) ) ) |
| Intervening Plaintiff, | ) ) ) |
| vs. | ) ) |
| XL SPECIALTY INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

**ENTRY ON XL SPECIALTY INSURANCE COMPANY'S MOTIONS FOR SUMMARY JUDGMENT AND CATLIN INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Dave's Detailing, Inc. d/b/a The Allen Groupe ("TAG"), brought this action against former liability insurer, XL Specialty Insurance Company ("XL Specialty"), to recover losses incurred in a lawsuit in Nevada (the "Nevada Lawsuit"). Catlin Insurance Company, Inc. ("Catlin") insured TAG throughout the Nevada Lawsuit. This court granted Catlin's motion to intervene this suit as a plaintiff for a claim of contribution and reimbursement against XL Specialty. XL Specialty now moves for summary judgment against both TAG and Catlin, while Catlin moves for summary judgment against XL Specialty as to the duty to defend. For the reasons set forth below,

1

the court **DENIES** XL Specialty's motion for summary judgment against TAG.  Further, as to XL Specialty's duty to defend, the court **DENIES** both Catlin's and XL Specialty's motions for summary judgment.

I.      **Background**

On April 5, 2010, Appearance Group, Inc. ("Appearance Group") filed an action in Nevada State Court against TAG and its employees, asserting tort and breach of contract claims related to the actions of a former Appearance Group employee who later worked for TAG.  (Compl. ¶ 9).  XL Specialty provided a Commercial General Liability Aviation Insurance Policy ("XL Policy") to TAG for the period from January 17, 2009 to January 17, 2010.  (*Id*. at ¶ 8).  Catlin provided similar insurance for the policy period of January 17, 2010 through January 17, 2011 ("Catlin Policy").

On August 3, 2010, Catlin's claims supervisor, Robert M. Kern, sent XL Specialty a copy of the First Amended Complaint from the Nevada Lawsuit.  (Declaration of Richard Imbrogno ("Imbrogno Decl."), Ex. A).  Kern noted that Catlin was defending TAG and its employees in the suit and demanded that XL Specialty tender a defense and indemnify TAG based on its prior policy.  (*Id*.).  Kern provided neither the Original Complaint nor any other information regarding the case.  On December 13, 2010, TAG's outside counsel made a written demand upon XL for defense and indemnity under the XL Policy.  (Compl., Ex. B).

On January 6, 2011, XL Specialty agreed to provide a defense to TAG in the Nevada Lawsuit "because certain allegations in the First Amended Complaint which could be read to allege defamation are potentially covered by the policy issued by XL to

2

[TAG]." (Imbrogno Decl., Ex. B). In particular, XL Specialty stated that the allegations in paragraph 84 of the First Amended Complaint may potentially be covered in the personal injury section of Coverage B since they may involve publication of material that slanders, libels, or disparages. (*Id*.). This allegation states: "Groth falsely informed Appearance Group customers and/or other third parties that Appearance Group was going to shut down its Clark County operations." (Nevada Amend. Compl. ¶ 84).

Despite XL's Specialty's agreement to provide a defense, it also noted that this defense was subject to a reservation of rights and that several policy exclusions may apply to this defamation claim, including actions that involve willful violations or knowledge of their falsity. (Imbrogno Decl., Ex. B). Additionally, XL Specialty stated that although it would offer a defense to the defamation allegations, it disclaimed coverage for all other causes of action because they were not even potentially covered under the XL Policy. (*Id*.).

After agreeing to defend the Nevada Lawsuit, XL Specialty learned that the Original Complaint in the action included two additional causes of action not in the First Amended Complaint: (1) "Business Disparagement against Groth"; and (2) "Commercial Defamation Per Se against Groth." (Nevada Orig. Compl., Seventeenth and Eighteenth Cause of Action; Imbrogno Decl., Ex. D). XL Specialty also discovered the Court Minutes of June 15, 2010 for the Nevada Lawsuit, which stated:

> Arguments by Counsel regarding . . . commercial defamation claim.  Mr. Ferenbach noted he filed a motion to amend and would not be proceeding with the defamation claim . . . Court stated its findings and noted the commercial defamation claim is dismissed . . . .

3

(Imbrogno Decl., Exs. D, G). On June 20, 2010 – five days after this court hearing -- the Appearance Group filed its First Amended Complaint, which Catlin ultimately sent to XL Specialty in August 2010.

Based on this new information, on April 28, 2011, XL Specialty notified TAG and Catlin that (1) no cause of action pending against TAG was potentially covered by the XL Policy; (2) XL Specialty never had a duty to defend or indemnify TAG or its employees; and (3) XL Specialty disclaimed coverage for all the allegations in the First Amended Complaint. (Imbrogno Decl., Ex. D). On May 9, 2011, counsel for TAG responded to XL Specialty, stating that XL Specialty still owed a defense and indemnification to TAG under the XL Policy and requested XL Specialty's appearance at a mediation for the lawsuit on May 17, 2011. (Compl., Ex C).

On May 16, 2011, XL Specialty reiterated in a letter to TAG that it would not be providing coverage and thus would not send a representative to the mediation for the Nevada Lawsuit. (Imbrogno Decl., Ex. H). By contrast, Catlin provided a defense to TAG in the Nevada Lawsuit pursuant to the Catlin Policy. Ultimately, the suit was settled and resulted in TAG paying $675,000 to Appearance Group. (Def.'s Memo., Ex. A).

On November 30, 2011, TAG filed this action. On October 31, 2012, this court granted Catlin's motion to intervene as a plaintiff in this matter. XL Specialty now moves for summary judgment against both plaintiffs while

intervening plaintiff Catlin moves for summary judgment as to XL Specialty's duty to defend TAG.

### II. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To that end, a genuine dispute as to a material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

The burden is upon the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the movant believes demonstrates an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, parties may assert that "the materials cited do not establish the absence or presence of a genuine dispute," and parties may also object to the admissibility in evidence of the material cited. FED. R. CIV. P. 56(c)(1), (2). Once the movant has met this burden, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

In sum, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

Here, XL Specialty and Catlin have filed cross-motions for summary judgment, but this neither alters the applicable standard nor implies there are no genuine issues of material fact. *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers,* 335 F.3d 643, 647 (7th Cir. 2003). Instead, in determining whether genuine and material factual disputes exist, the parties' respective memoranda and exhibits are analyzed and all facts and reasonable inferences resolved and construed in a light most favorable to the respective non-movant. *IPofA W. 86th St. 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*, No. 1:09-cv-0573, 2011 WL 3021578, at *2 (S.D. Ind. July 21, 2011). Thus, when considering XL Specialty's motion for summary judgment, the court must consider the evidence in the light reasonably most favorable to Catlin, and vice versa. *Midwestern Indem. Co. v. Laikin*, 119 F. Supp. 2d 831, 833 (S.D. Ind. 2000).

### III.   Discussion

As a federal court sitting in diversity, this court must apply the choice-of-law rules of the forum state (Indiana) in determining which state's substantive law applies. *State Farm Mut. Auto. Ins. Co. v. Conway*, 779 F. Supp. 963, 967 (S.D. Ind. 1991) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487 (1941)). Here, XL Specialty states in its brief – and TAG and Catlin agree – that the principal location of the insured is Indiana and thus Indiana law governs. *See Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005) ("An insurance policy is governed by the law of the principal location of the insured risk during the term of the policy"); *G & S Holdings, LLC v. Cont'l Cas. Co.*, No. 3:09-cv-00592, 2011 WL 855345, at *5 (N.D. Ind. Mar. 8, 2011) (noting the Indiana Supreme Court has adopted the uniform-contract-interpretation

approach in the insurance context and, as a result, a district court in Indiana hearing such a case must "apply the law of a single state in interpreting an insurance policy, even if the policy covers multiple risks in multiple states"). That said, XL Specialty references Nevada law when discussing the elements for causes of action in the Nevada Lawsuit. The court need not belabor this choice of law issue at this time as differences in state law for these torts, if any, have no bearing on this motion. Accordingly, the court will apply Indiana law to the interpretation of the XL Policy.

### A. Duty to Defend

Under Indiana law, the duty to defend is broader than the duty to indemnify. *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 200 (Ind. Ct. App. 2005). To that end, an insurance company may be required to defend an entire suit if the policy is applicable even though it may not be responsible for all the damages assessed. *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991). Moreover, it is the nature of the claim, not its merit, which establishes the insurer's duty to defend. *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (1991). As a result, "if it is determined that an insurer has a contractual duty to defend a suit based upon risks it has insured, the insurer will not be relieved of that obligation, regardless of the merits of the claim." *Id*.

The court determines an insurer's duty to defend by "comparing the underlying factual allegations of the complaint with the relevant provisions of the insurance policy." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co.*, No. 3:11-cv-161, 2012 WL 6627068, at *2 (S.D. Ind. Dec. 19, 2012) (citing *Indiana Farmers Mut. Ins. Co.*

*v. North Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1272 (Ind.Ct.App.2009)). By extension, the complaint's "legal labels" are immaterial to the duty to defend. *Indiana Farmers*, 917 N.E.2d at 1271 (citing COUCH ON INSURANCE § 126:3 (3d ed. 2008) ("[T]he legal theory asserted by the claimant is immaterial to the determination of whether the risk is covered . . . [A] claim clearly excluded from policy coverage cannot be turned into a covered risk by styling the pleadings to fit the policy language.")). Instead, the court must determine the duty to defend by examining the "allegations of the complaint coupled with those facts known to or ascertainable by the insurer after reasonable investigation."[1] *Trisler*, 575 N.E.2d at 1023. "If the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required." *Liberty Mut*, 831 N.E.2d at 198.

---

[1] There is uncertainty under Indiana law whether an insurer is required to conduct further investigation when assessing its duty to defend. In *Kopko*, the Indiana Supreme Court held that "[t]he duty to defend is determined solely by the nature of the complaint." 570 N.E.2d at 1285; *see also Travelers Cas. & Sur. Co. v. Elkins Constructors, Inc.*, No. 97-1807, 2000 WL 748091, at *6 (S.D. Ind. June 6, 2000) (holding the district court was bound by Seventh Circuit decision to follow the doctrine set forth in *Kopko*). By contrast, the parties here cite the standard that the Indiana Court of Appeals has set forth post-*Kopko*, finding that a "duty to defend is determined from the allegations of the complaint and from the facts known or ascertainable by the insurer after an investigation has been made." *Indiana Farmer Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1382 (Ind. Ct. App. 1997); *Wayne Twp. Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995) (same). The Indiana Court of Appeals attempted to reconcile these cases in *Monroe Guar. Ins. Co. v. Monroe*, explaining that the duty to investigate only comes into play if the facts underlying the complaint are in dispute. 677 N.E.2d 620, 623 (Ind. Ct. App. 1997). Additionally, this court examined the issue in depth in *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, and found that in determining a duty to defend, "an insurer is entitled to rely on the allegations of the underlying complaint as well as those facts known or ascertainable by the insurer through a reasonable investigation." No. 1:04-cv-1920, 2007 WL 1021825, at * 7 (S.D. Ind. Mar. 30, 2007). The court agrees with the analysis in *Trinity Homes*; accordingly, in determining XL Specialty's duty to defend, the court will evaluate any facts obtained through reasonable investigation.

### 1. Allegations and XL Policy

TAG and Catlin argue that several allegations in the Nevada Lawsuit give rise to a duty to defend for XL Specialty. Specifically, Appearance Group alleged that "Groth falsely informed Appearance Group customers and/or other third parties that Appearance Group was going to shut down its Clark County operations." (Nevada Amend. Compl. ¶ 84). And Appearance Group further alleged that Groth "falsely stat[ed] to Appearance Group customers that Appearance Group could no longer provide reliable service because it may need to shut down its Clark County operations." (*Id*. at ¶¶ 91, 117).

Based on these allegations, among others, Catlin and TAG argue that the First Amended Complaint gave rise to defamation and disparagement claims, which are covered under the XL Policy. Coverage B of the XL Policy applies to:

> (a) **Personal injury** caused by an offense arising out of your Aviation operations, excluding advertising, publishing, broadcasting or telecasting done by or for you;
>
> (b) **Advertising injury** caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the coverage territory during the policy period.

(XL Policy 3). These terms are later defined:

> **Personal injury** means injury, other than bodily injury, arising out of one or more of the following offenses: . . . oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.
>
> **Advertising injury** means injury arising out of one or more of the following offenses: . . . oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

9

(*Id*. at 9-10). However, this coverage does not apply to personal or advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." (*Id*. at 3).

Based principally on paragraph 84 of the First Amended Complaint, XL Specialty initially determined that it owed TAG coverage under the personal injury section of Coverage B of the XL Policy because of the potential coverage for the defamation allegations. XL Specialty, however, now argues that it had no such duty because (1) the causes of action were dropped in the First Amended Complaint; and (2) the Minute Order dismissed the commercial defamation claim. Further, XL Specialty argues that commercial defamation and business disparagement are "both in the nature of defamation" and, as a result, the Appearance Group abandoned both claims. By extension, XL Specialty contends that since it undertook a defense based strictly on the defamation allegations, the abandonment of such claims eliminates its duty to defend.

### a. Defamation

XL Specialty does not contest that the factual allegations of the First Amended Complaint gave rise to a duty to defend because of a potential defamation claim. The crux of the issue is whether Appearance Group abandoned the claim and thus relieved XL Specialty of a duty to defend. The court now examines the facts ascertained by XL Specialty during its investigation.

XL Specialty's investigation revealed the following facts: (1) counsel for Appearance Group stated in open court it would not be proceeding on the defamation

claim; (2) the Nevada court noted that "the commercial defamation claim is dismissed"; and (3) subsequent to that hearing, Appearance Group filed a First Amended Complaint which omitted a defamation cause of action that was included in the Original Complaint. Based on these factors, XL Specialty could reasonably conclude that Appearance Group had abandoned any potential defamation claim, and thus, XL Specialty justly refused to defend the defamation allegations. *See Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 42 n.6 (Ind. 2002) ("Where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim is patently outside of the risk covered by the policy, the insurer may properly refuse to defend.").

That said, TAG and Catlin argue that a defamation claim still exists because the underlying factual allegations remain in the First Amended Complaint. This argument fails. Indeed, any attempt by Appearance Group to reassert a defamation claim or amend its complaint to include a defamation claim would be futile. *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) ("An amendment is futile when it merely restates the same facts using different language, or reasserts a claim previously determined."); *Westbrook v. Archey*, No. 1:05-cv-00057, 2006 WL 44207, at *1 (N.D. Ind. Jan. 9, 2006) ("An amendment is futile when it reasserts a claim previously determined.").

Lastly, contrary to TAG's and Catlin's contentions, XL Specialty has not determined its duty to defend by merely examining the labels of the cause of action. In fact, XL Specialty originally undertook a duty to defend without any labels for defamation or disparagement; instead, it based this decision solely on paragraph 84 of the First Amended Complaint. (*See* Compl., Ex. B (TAG's outside counsel warned XL

Specialty in its initial demand for coverage that "[w]hile there is no cause of action entitled defamation, libel or slander, the First Amended Complaint contains three references to a potential claim of defamation or disparagement")). Plaintiffs cannot claim that XL Specialty is now basing its decision on missing labels when the initial decision to defend stemmed from the same allegations. Thus, this argument carries little weight. Accordingly, the defamation claim had been abandoned, and XL Specialty has no duty to defend under the XL Policy for allegations relating to defamation.

### b. Disparagement

As noted above, the court first looks to the factual allegations of the complaint to determine whether there was a duty to defend as to any potential disparagement claims. Here, Appearance Group alleges that TAG's employee falsely told Appearance Group customers that Appearance Group would be shutting down its Clark County operations and thus could not provide reliable service. (Nevada Amend. Compl. at ¶¶ 84, 91, 117). Coverage B of the XL Policy applies to personal and advertising injuries, including those resulting from oral or written publication of material that "disparages a person's or organization's goods, products or services." To that end, Black's Law Dictionary (7th ed. 1999) defines "disparage" as "to dishonor (something or someone) by comparison" or "to unjustly discredit or detract from the reputation of (another's property, product, or business)." *See Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 380 (7th Cir. 2010) (concluding that the Indiana Supreme Court would rely on dictionary definitions of "disparage" to determine the meaning of the word in a settlement agreement). In this case, notifying a competitor's customers that the competitor is closing down a branch

would certainly discredit the reputation of another's business and product. Thus, XL Specialty would have a duty to defend based on the allegations of the First Amended Complaint.

That does not end the inquiry, however, as XL Specialty again argues that its investigation indicated that the disparagement claim had been abandoned and thus no coverage was required. As with the defamation claim, a cause of action for disparagement was included in the Original Complaint and omitted from the First Amended Complaint. And much like defamation, the underlying allegations for disparagement remain in the First Amended Complaint. (*See* Nevada Amended Compl. ¶¶ 84, 91, 117). But the similarities end there. Counsel for Appearance Group stated it would not proceed on the defamation claim yet said nothing of disparagement; similarly, the court noted the dismissal of the defamation claim – singular – not defamation *claims*.

Nevertheless, XL Specialty argues that a disparagement claim is practically the same as a defamation claim, and as a result, the court intended to dismiss all claims arising from the allegations. This speculation is not convincing. Under Indiana law, disparagement is similar to defamation yet is still distinct. For instance, disparagement differs from defamation "in that it seeks to protect economic interests rather than reputational interests." *Sanderson v. Indiana Soft Water Servs., Inc.*, No. 00-0459, 2004 WL 1784755, at *7 (S.D. Ind. July 23, 2004) (acknowledging that there is "limited recognition" of disparagement in Indiana).[2] Thus, the court dismissing the commercial

---

[2] Likewise, the same result would occur if the court were to analyze this issue under Nevada law. *See Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 386 (2009) ("The

defamation *claim* would not be clear evidence of intent to dismiss any disparagement claims as well.

Moreover, the definitions of "Personal Injury" and "Advertising Injury" in the XL Policy note a distinction between defamation and disparagement. Specifically, material that slanders or libels a person or organization is set off by the disjunctive "or" from material that disparages a person or organization. Thus, while these causes of action may be similar, the plain language of the policy identifies them as distinct. *See Indiana Ins. Co. v. N. Vermillion Cmty. Sch. Corp.*, 665 N.E.2d 630, 635 (Ind. Ct. App. 1996) ("The use of the disjunctive 'or' before 'disparaging' suggests that something different though similar and additional to 'defamatory' is intended."). Hence, defamation cannot be construed as merely a synonym for disparagement and vice versa.

In sum, although the factual allegations were not clearly outside the XL Policy, a question of material fact remains as to whether the disparagement claim had been abandoned by Appearance Group or dismissed by the Nevada Court. *See DSM Desotech, Inc. v. 3D Sys. Corp.*, 900 F. Supp. 2d 783, 789 (N.D. Ill. 2012) (denying summary judgment where question of fact remained as to whether defendant could reasonably infer

---

elements required to prove a cause of action for business disparagement differ from the elements required to prove classic defamation and, necessarily, defamation per se") (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) (explaining that an "action for defamation is to protect the personal reputation of the injured party, whereas the action for injurious falsehood or business disparagement is to protect the economic interests of the injured party against pecuniary loss")).

that plaintiff intended to abandon its patent infringement claims).  Consequently, a material issue of fact remains as to whether XL Specialty had a duty to defend.[3]

Since the court has found a material issue of fact as to the duty to defend, it need not address any of Catlin's or XL Specialty's other arguments for coverage or exclusions of coverage, respectively.  *See Travelers Cas. & Sur. Co. v. Elkins Constructors, Inc.*, No. 97-1807, 2000 WL 724006, at *1 (S.D. Ind. May 18, 2000) ("Even if recovery in the underlying suit is premised upon several theories of liability, some of which are excluded from policy coverage, the insurer still is obligated to defend if even only one theory falls within the policy's coverage.") (citing *Kopko*, 570 N.E.2d at 1285).  Accordingly, the court denies both Catlin's and XL Specialty's motion for summary judgment as to the duty to defend.  Moreover, to the extent that XL Specialty's motion for summary judgment against TAG concerns the duty to defend, this motion is also denied.

### B.  Duty to Indemnify

The duty to indemnify "does not arise until the party seeking indemnity suffers loss or damages; that is, at the time of payment of the underlying claim, payment of a

---

[3] XL Specialty argues in a footnote – without citation to any authority – that even assuming disparagement constitutes a cause of action distinct from defamation, under Nevada law, all claims in the First Amended Complaint required proof of "knowledge that the claims were false"; hence, the exclusion under the XL Policy for material published "with knowledge of its falsity" would apply.  This misstates Nevada law.  The element of malice is required to state a claim for business disparagement. *Clark Cnty. Sch. Dist.*, 125 Nev. at 386.  This is proven when the defendant either intended to cause harm to the plaintiff's pecuniary interests or had knowledge of a statement's falsity, but it also may be shown by a defendant publishing a remark with reckless disregard for its truth.  *Id.*; *see also Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 799 (S.D. Ind. 2011) (stating that actual malice exists under Indiana law when "the defendant publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not") (citation omitted).  As a result, there is an issue of fact as to whether the exclusion is applicable, and thus the court does not find XL Specialty's argument persuasive.

judgment on the underlying claim, or payment in settlement of the underlying claim." *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 757 (Ind. Ct. App. 2002) (citation omitted). Here, settlement of the Nevada Lawsuit makes this issue ripe for judgment.

### 1. Defamation claim

As discussed in detail above, the court finds that the defamation claim had been abandoned, and thus XL Specialty has no duty to defend such allegations under the XL Policy. Because Indiana law states that an insurer's duty to defend is broader than its duty to indemnify, it is self-evident that "an insurer who has no duty to defend has no duty to indemnify its insured either." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co.*, No. 3:11-cv-161, 2012 WL 6627068, at *5 (S.D. Ind. Dec. 19, 2012); *United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992). Thus, XL Specialty has no duty to indemnify TAG for the lawsuit with respect to any defamation allegations.

### 2. Disparagement

In contrast to defamation, an issue of fact remains as to whether XL Specialty had a duty to defend any disparagement claims. Though the duty to indemnify is not as broad as the duty to defend, the same material question of fact as to the abandonment of the disparagement claim prevents summary judgment as to the duty to indemnify. As a result, XL Specialty's motion for summary judgment against TAG must be denied. Because the court has found a material issue of fact exists for a duty to indemnify, at this time it need not address XL Specialty's arguments concerning exclusions under the XL Policy which may preclude coverage for other allegations.

**IV.    Conclusion**

For the reasons set forth above, the court finds that XL Specialty's summary judgment motions (Docket ## 31, 51) against TAG and Catlin are **DENIED**.  Moreover, Catlin's motion for summary judgment (Docket # 45) as to the duty to defend is **DENIED**.


**SO ORDERED** this 2nd day of August 2013.

                                                          _____
                                                          RICHARD L. YOUNG,  CHIEF JUDGE
                                                          United States District Court
                                                          Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.