UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVE'S DETAILING, INC. d/b/a THE ALLEN GROUPE, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:11-cv-1585-RLY-DKL |
| CATLIN INSURANCE COMPANY, INC. | ) ) ) | |
| Intervening Plaintiff, | ) ) | |
| vs. | ) ) | |
| XL SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**ENTRY ON XL SPECIALTY INSURANCE COMPANY'S SUPPLEMENTAL
MOTION FOR SUMMARY JUDGMENT AND DAVE'S DETAILING, INC. AND
CATLIN INSURANCE COMPANY, INC.'S SUPPLEMENTAL CROSS-MOTION
FOR SUMMARY JUDGMENT**

Plaintiff, Dave's Detailing, Inc. d/b/a The Allen Groupe ("TAG"), brought this

action against former liability insurer, XL Specialty Insurance Company ("XL

Specialty"), to recover losses incurred in a lawsuit in Nevada (the "Nevada Lawsuit").

Intervening Plaintiff, Catlin Insurance Company, Inc. ("Catlin"), insured TAG

throughout the Nevada Lawsuit. XL Specialty and Catlin previously filed cross-motions

for summary judgment. The court denied both motions. Based on newly discovered

evidence, all parties now file supplemental cross-motions for summary judgment. For the

reasons set forth below, the court **GRANTS** XL Specialty's supplemental motion for summary judgment and **DENIES** Catlin and TAG's respective motion.

## I.     Background

### A.  Nevada Lawsuit

On April 5, 2010, Appearance Group, Inc. ("Appearance Group") filed an action in Nevada State Court against TAG and its employees, asserting tort and breach of contract claims related to the actions of a former Appearance Group employee, Jeffery R. Groth, who later worked for TAG.  (Compl. ¶ 9).  XL Specialty provided a Commercial General Liability Aviation Insurance Policy ("XL Policy") to TAG for the period from January 17, 2009 to January 17, 2010.  (*Id.* at ¶ 8).  Catlin provided similar insurance for the policy period of January 17, 2010 through January 17, 2011 ("Catlin Policy").

On August 3, 2010, Catlin's claims supervisor, Robert M. Kern, sent XL Specialty a copy of the First Amended Complaint from the Nevada Lawsuit.  (Declaration of Richard Imbrogno ("Imbrogno Decl."), Ex. A).  Kern noted that Catlin was defending TAG and its employees in the suit and demanded that XL Specialty tender a defense and indemnify TAG based on its prior policy.  (*Id.*).  Kern provided neither the Original Complaint nor any other information regarding the case.  On December 13, 2010, TAG's outside counsel made a written demand upon XL Specialty for defense and indemnity under the XL Policy.  (Compl., Ex. B).

On January 6, 2011, XL Specialty agreed to provide a defense to TAG in the Nevada Lawsuit "because certain allegations in the First Amended Complaint which could be read to allege defamation are potentially covered by the policy issued by XL to

[TAG]." (Imbrogno Decl., Ex. B).  In particular, XL Specialty stated that the allegations in paragraph 84 of the First Amended Complaint may potentially be covered in the personal injury section of Coverage B since they may involve publication of material that slanders, libels, or disparages.  (*Id*.).  This allegation states: "Groth falsely informed Appearance Group customers and/or other third parties that Appearance Group was going to shut down its Clark County operations."  (Nevada Amend. Compl. ¶ 84).

Despite XL Specialty's agreement to provide a defense, it also noted that this defense was subject to a reservation of rights and that several policy exclusions may apply to this defamation claim, including actions that involve willful violations or knowledge of their falsity.  (Imbrogno Decl., Ex. B).  Additionally, XL Specialty stated that although it would offer a defense to the defamation allegations, it disclaimed coverage for all other causes of action because they were not even potentially covered under the XL Policy.  (*Id*.).

After agreeing to defend the Nevada Lawsuit, XL Specialty learned that the Original Complaint in the action included two additional causes of action not in the First Amended Complaint: (1) "Business Disparagement against Groth"; and (2) "Commercial Defamation Per Se against Groth."  (Nevada Orig. Compl., Seventeenth and Eighteenth Cause of Action; Imbrogno Decl., Ex. D).  XL Specialty also discovered the Court Minutes of June 15, 2010 for the Nevada Lawsuit, which stated:

> Arguments by Counsel regarding . . . commercial defamation claim.  Mr. Ferenbach noted he filed a motion to amend and would not be proceeding with the defamation claim . . . Court stated its findings and noted the commercial defamation claim is dismissed . . . .

3

(Imbrogno Decl., Exs. D, G). On June 20, 2010 – five days after this court hearing – Appearance Group filed its First Amended Complaint, which Catlin ultimately sent to XL Specialty in August 2010.

Based on this new information, on April 28, 2011, XL Specialty notified TAG and Catlin that (1) no cause of action pending against TAG was potentially covered by the XL Policy; (2) XL Specialty never had a duty to defend or indemnify TAG or its employees; and (3) XL Specialty disclaimed coverage for all the allegations in the First Amended Complaint. (Imbrogno Decl., Ex. D). On May 9, 2011, counsel for TAG responded to XL Specialty, stating that XL Specialty still owed a defense and indemnification to TAG under the XL Policy and requested XL Specialty's appearance at a mediation for the lawsuit on May 17, 2011. (Compl., Ex C).

On May 16, 2011, XL Specialty reiterated in a letter to TAG that it would not be providing coverage and thus would not send a representative to the mediation for the Nevada Lawsuit. (Imbrogno Decl., Ex. H). By contrast, Catlin provided a defense to TAG in the Nevada Lawsuit pursuant to the Catlin Policy. Ultimately, the suit was settled and resulted in TAG paying $675,000 to Appearance Group.

**B. Procedural History**

On November 30, 2011, TAG filed this action against XL Specialty for breach of contract and bad faith denial of insurance coverage. On October 31, 2012, this court granted Catlin's motion to intervene as a plaintiff in this matter. XL Specialty moved for summary judgment against both Plaintiffs while intervening Plaintiff Catlin moved for summary judgment as to XL Specialty's duty to defend TAG. On August 2, 2013, the

court found that Appearance Group had abandoned its defamation claim, but a question of material fact remained as to whether it abandoned the business disparagement claim. Consequently, the court held that a material issue of fact remained as to XL Specialty's duty to defend TAG and denied all motions.

XL Specialty subsequently filed a motion for leave to file a supplemental motion for summary judgment based on newly discovered evidence. (Docket # 66). Plaintiffs responded by requesting the ability to also supplement their motion for summary judgment with additional evidence. (Docket # 70). The Magistrate Judge granted both motions. (Docket # 73). The new evidence submitted by the parties will be addressed in the Discussion Section below.

## II.    Discussion

TAG is an Indiana company with its principal place of business located in Indianapolis, Indiana. (Compl. ¶ 1). Accordingly, XL Specialty's obligations under the XL Policy are governed by Indiana law. *See Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005) ("An insurance policy is governed by the law of the principal location of the insured risk during the term of the policy"). Under Indiana law, the interpretation of an insurance policy is primarily a question of law, and as such, is a question appropriate for summary judgment. *Estate of Sullivan v. Allstate Ins. Co.,* 841 N.E.2d 1220, 1223 (Ind. Ct. App. 2006).

An insurer's duty to defend is broader than its duty to indemnify. *Liberty Mut. Ins. Co. v. OSI Indus., Inc*., 831 N.E.2d 192, 200 (Ind. Ct. App. 2005). The court determines an insurer's duty to defend by examining the "allegations of the complaint

coupled with those facts known to or ascertainable by the insurer after reasonable investigation."[1] *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). A complaint's legal labels are immaterial. *Indiana Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1271 (Ind. Ct. App. 2009) (citing COUCH ON INSURANCE § 126:3 (3d ed. 2008)). "[A]n insurer may properly refuse to defend where an independent investigation reveals a claim *patently* outside the risks covered by the policy." *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1025 (Ind. Ct. App. 1999) (citation omitted). In all other circumstances, an insurer that refuses to defend must protect its interests by filing a declaratory judgment action for a judicial determination of its obligations under the policy or defend its insured under a reservation of rights. *Id.*

### A. XL Specialty's Duty to Defend

XL Specialty's additional evidence in support of its supplemental motion for summary judgment includes: (1) Appearance Group's motion for leave to file a First Amended Complaint stating that it was "eliminating its claims for Business Disparagement and Commercial Defamation"; and (2) a transcript of the hearing discussing this motion, wherein Appearance Group's counsel stated it was "tak[ing]

---

[1] As discussed in the court's prior summary judgment entry, there is uncertainty under Indiana law whether an insurer is required to conduct further investigation when assessing its duty to defend or if it may rely solely on the complaint. Based on extensive support by the Indiana Court of Appeals, the court will again evaluate any facts known to or ascertainable by the insurer after reasonable investigation in determining XL Specialty's duty to defend. *See, e.g., Knight v. Indiana Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007); *Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 184 (Ind. Ct. App. 2004); *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co. of Wisconsin*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003); *Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 695 (Ind. Ct. App. 2002); *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 306 (Ind. Ct. App. 2001).

out . . . the business disparagement and the other defamation claim" and "dropping the defamation-related *claims*." (Declaration of Robert Hernquist ("Hernquist Decl."), Ex. A ("Motion for Leave") 3:12-14; *Id.*, Ex. B ("Nevada Transcript") 11:13-17; 22:6-13) (emphasis added)). The transcript reflects that TAG understood Appearance Group's intentions, as TAG claimed this was done to "eliminate insurance coverage." (Nevada Transcript 13:18-22). In addition, counsel for Appearance Group stated that he intended to remove both the defamation and business disparagement claims in the First Amended Complaint, and thereafter did not take any action to pursue such a claim. (Hernquist Decl. ¶¶ 4-5). This evidence clarifies the language of the June 15, 2010 Minute Order and establishes that both the Nevada Court and the parties intended to, and in fact did, dismiss not only the defamation claim, but also the business disparagement claim from the proceedings.

Pursuant to the XL Policy, XL Specialty was obligated to provide a defense to TAG based on allegations that may involve the publication of material that slanders, libels, or disparages. Accordingly, the Nevada Court's dismissal of the defamation and business disparagement claims extinguished XL Specialty's duty to defend TAG in the Nevada Lawsuit. *See Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1383 (Ind. Ct. App. 1997) (finding insurer did not have a duty to defend after examining the facts obtained after a reasonable investigation); *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind. Ct. App. 1992) ("where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend").

Notwithstanding the fact that Appearance Group abandoned both the defamation and business disparagement claims in open court on June 15, 2010, Plaintiffs argue that XL Specialty still owed them a defense because: (1) Appearance Group continued its pursuit of a business disparagement claim as evidenced by certain discovery in the case; (2) paragraph 84 of the Appearance Group's First Amended Complaint alleged a business disparagement claim; (3) XL Specialty failed to conduct a reasonable investigation before notifying TAG it owed no duty to defend or indemnify; and (4) XL Specialty is estopped from asserting late policy defenses. These arguments are addressed in turn below.

### 1. Discovery

Plaintiffs argue that the discovery conducted by Appearance Group after the June 15, 2010 hearing illustrates that Appearance Group continued to pursue the business disparagement claim even after the claim was dismissed from the Nevada Lawsuit. First, Plaintiffs point to TAG's own interrogatory from January 2011, asking Appearance Group to identify facts which support the contention that "Groth falsely stat[ed] to Appearance Group customers that Appearance Group could no longer provide reliable service because it may need to shut down its Clark County operations." (Appearance Group's Response to Jeffrey R. Groth's First Set of Interrogatories, January 11, 2011 (attached as Exhibit A to XL Specialty's Supp. Mot. for Summary Judgment)). Plaintiffs also point to Appearance Group's third-party requests for information by way of subpoenas deuces tecum in February 2011, on two business associates of Appearance Group -- Wheels in Motion and Cintas. (Declaration of David J. Merrill, Exs. 5, 6). The

subpoenas sought documents "identifying the name and last known address" of employees who performed any work or delivered any materials to Appearance Group. (*Id.*). The witnesses identified in the response were expected to have knowledge regarding "statements made by Mr. Groth regarding" Appearance Group and TAG. (*Id.* at ¶ 9).

Plaintiffs' reliance on TAG's interrogatory is not convincing. At the time the discovery was sought, the business disparagement claim was not part of the Nevada Lawsuit. Thus, when Appearance Group answered the interrogatory, it had no reason to believe the discovery was aimed at claims other than those set forth in its own First Amended Complaint, namely claims for breach of contract and for breach of the duty of good faith and fair dealing. (*See* Hernquist Decl. ¶ 5) (stating allegations in the First Amended Complaint regarding false statements to customers were included as part of the breach of contract and breach of the tort duty of good faith and fair dealing counts).

Plaintiffs' reliance on the information elicited from Appearance Group's third-party subpoenas is likewise misplaced. Counsel for Appearance Group, Robert Hernquist, stated that the information received in response to the subpoenas was not used as a basis for reasserting either the commercial defamation or business disparagement claim. (Supplemental Declaration of Robert Hernquist ("Hernquist Supp. Decl.") ¶ 4). In fact, Appearance Group did not conduct any further discovery to establish the truth of the information it received. (*Id.*). Thus, Plaintiffs' discovery-related arguments are insufficient to raise a genuine issue of material fact as to XL Specialty's duty to defend.

## 2.      Reasserting the Claim

Next, Plaintiffs argue that the First Amended Complaint contained an allegation consistent with a business disparagement claim; that being, "Groth falsely informed Appearance Group customers and/or other third parties that Appearance Group was going to shut down its Clark County operations." (Nevada Amend. Compl. ¶ 84). Plaintiffs thus contend that a business disparagement claim remained in the First Amended Complaint, despite Appearance Group's representations during the June 15, 2010 hearing. As a result, Plaintiffs argue this triggered XL Specialty's duty to defend.

Unlike the original Complaint, the First Amended Complaint did not contain a separate claim for business disparagement. It contained, among others, a claim for breach of contract and a claim for breach of the duty of good faith and fair dealing. Thus, a comparison of the two complaints, like the one performed by XL Specialty, reflects that the allegation was supportive of the separately identified claims in the First Amended Complaint, and not supportive of a business disparagement claim.

Similarly, Plaintiffs argue that Appearance Group could have amended the pleadings to conform to the evidence pursuant to Nevada Rule of Civil Procedure 15(b). Plaintiffs' argument, based on what Appearance Group could have done, is speculative and not supported by the evidence in the record. Indeed, Appearance Group's counsel stated that he did not attempt to introduce or establish on the record any evidence as to the substance of any information received from employees of Wheels in Motion or Cintas concerning specific statements made by Groth – the original basis for the business disparagement claim. (Hernquist Supp. Decl. ¶ 4). Thus, Plaintiffs' argument that

Appearance Group could have reasserted a business disparagement claim is insufficient to raise a genuine issue of material fact.

### 3.    Lack of Reasonable Investigation

Plaintiffs also contend that XL Specialty failed to conduct a reasonable investigation before it refused to defend TAG in the Nevada Lawsuit.  The court has not found, nor have the parties cited, any case law where Indiana courts have defined what constitutes a "reasonable investigation."  *See Worth v. Tamarack American, a Div. of Great American Ins. Co.*, 47 F.Supp.2d 1087, 1100 (S.D. Ind. 1999) (acknowledging that Indiana courts had not defined what constitutes a "reasonable investigation," yet finding the insurer's investigation was reasonable prior to refusing to defend malpractice complaint).

The Iowa Supreme Court has held on several occasions that "an imperfect investigation, standing alone, is not sufficient cause for recovery where the insurer, in fact, has an objectively reasonable basis to deny coverage."  14 COUCH ON INS. § 207:25 (citing *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 98 (Iowa 1995) *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775 (Iowa 2000)); *see also Reuter v. State Farm Mut. Auto. Ins. Co., Inc.*, 469 N.W.2d 250, 254 (Iowa 1991) (same).  Similarly, courts in Georgia and Florida have held that an insurer who fails to conduct a reasonable investigation and refuses to provide a defense may be liable for a breach of the duty to defend "if a reasonable investigation at the time would have established the potential for coverage."  14 COUCH ON INS. § 205:8 (citing *Lawyers Title Ins. Corp. v. Stribling*, 294 Ga. App. 382, 385 (2008) (quoting *Colonial Oil Indus. v.*

*Underwriters Subscribing etc.*, 268 Ga. 561, 562 (1997)); *see also Victoria Select Ins. Co. v. Vrchota Corp.*, 805 F. Supp. 2d 1337, 1343 (S.D. Fla. 2011) (same). Although Indiana courts have not addressed this topic, the court agrees with the rationale of these other jurisdictions.

The record establishes that, at worst, XL Specialty conducted an "imperfect investigation" by failing to read Appearance Group's Motion for Leave and the transcript of the June 15, 2010 hearing. That alone is not sufficient to create a genuine issue of material fact where the additional evidence establishes that XL Specialty had a reasonable basis to deny coverage. Indeed, a more thorough investigation by XL Specialty would not have established the potential for coverage; rather, it would have reaffirmed XL Specialty's determination that the claims remaining in the lawsuit were "patently outside the risks covered by the [P]olicy." *Recticel Foam*, 716 N.E.2d at 1026. Accordingly, as a matter of law, XL Specialty cannot be liable for breaching its duty to defend for failing to conduct a more thorough investigation of the claims at issue in the Nevada Lawsuit.

### 4. Estoppel

Lastly, Plaintiffs argue that XL Specialty is estopped from asserting late policy defenses. Under Indiana law, the "failure of an insurer to . . . deny coverage as soon as is reasonably possible after a demand to defend has been made may result in a waiver or estoppel." *Protective Ins. Co. v. Coca-Cola Bottling Co. Indianapolis Inc.*, 423 N.E.2d 656, 661 (Ind. Ct. App. 1981). In order for the doctrine to apply, an insured must be prejudiced by the insurer's late policy defense. *Id.* at 662. Here, TAG argues XL

Specialty provided late notice of its denial of a defense and indemnity and, as a result, TAG was prejudiced.

The record reflects that TAG participated in the June 15, 2010 hearing; thus, it knew before XL Specialty received the First Amended Complaint that the defamation and business disparagement claims had already been dismissed. TAG's counsel commented at the hearing that the reason Appearance Group abandoned those claims was to "eliminate insurance coverage." (Nevada Transcript 13:18-22). Thus, Plaintiffs' argument that they were prejudiced by XL Specialty's refusal to defend claims they knew had been abandoned is unavailing.

Even if TAG believed Appearance Group was still pursuing the defamation and business disparagement claims, it still could not establish that it was prejudiced as a result of the late notice. This is not a case where TAG was denied a defense by its insurer on the eve of trial. Rather, XL Specialty initially agreed to defend TAG under a reservation of rights. When its own investigation established that it had no duty to defend, XL Specialty immediately alerted TAG that it would no longer defend them in the Nevada Lawsuit. Catlin continued its defense of TAG, and nothing in the record indicates that Catlin did not adequately represent TAG during settlement negotiations. Plaintiffs, therefore, have failed to establish that they would have been in a better position if XL Specialty had notified them sooner. Thus, Plaintiffs' estoppel argument fails as a matter of law. *See Travelers Prop. Cas. Co. of Am. v. Marion T, LLC*, No. 1-07-cv-1384, 2010 WL 1936165, at *4 (S.D. Ind. May 12, 2010) (finding no prejudice by insurer's delay in invoking exclusion and thus no basis for finding estoppel).

Plaintiffs' additional evidence and arguments fail to raise a genuine issue of material fact regarding XL Specialty's duty to defend TAG in the Nevada Lawsuit. Accordingly, the court grants XL Specialty's supplemental motion for summary judgment. In addition, "an insurer who has no duty to defend has no duty to indemnify its insured either." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co.*, 913 F. Supp. 2d 682, 688 (S.D. Ind. 2012) *aff'd sub nom. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co. LLC*, 735 F.3d 539 (7th Cir. 2013). Consequently, XL Specialty had no duty to indemnify TAG either.

### III.   Conclusion

For the reasons set forth above, the court finds that XL Specialty's supplemental summary judgment motion (Docket # 75) against TAG and Catlin is **GRANTED**. Catlin and TAG's supplemental motion for summary judgment (Docket # 81) is **DENIED**.

**SO ORDERED** this 7th day of April 2014.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.